Ruby Evans WELCH and Hazel Evans PARKS
*v.* Marolyn Moore TARVER and Carolyn Moore
HONEYCUTT

73-260                                    507 S.W. 2d 505

Opinion delivered March 25, 1974
[Rehearing denied April 29, 1974.]

*Shackleford & Shackleford*, for appellants.

*H. Derrell Dickens*, for appellees.

GEORGE ROSE SMITH, Justice. This suit for a declaratory judgment was brought by the two appellees, twin sisters, to obtain a judicial construction of a quitclaim deed by which their grandmother. Mary Etta Evans, at the age of 96, conveyed a 120-acre tract of land to her two daughters, the appellants (who are the appellees' aunts). At the time of the conveyance the grantor had a life estate in the land, coupled with a power under her husband's will to dispose of the fee simple. The chancellor construed the deed to convey only the grantor's life estate, which means that the appellees receive under their grandfather's will an undivided one-third interest in the land. For reversal the appellants contend that their mother intended to convey the fee simple to them and that her deed should be so construed.

Counsel agree that the problem is that of determining the grantor's intention. The controlling rule of construction was stated in *Walters v. Bristow*, 77 Ark. 182, 91 S.W. 305, 113 Am. St. Rep. 136 (1905), where, as here, the grantor had a life estate in addition to the power:

"The question of whether a deed is made in execution of a power contained in a will is one of intention, to be gathered from the terms of the deed and from the circumstances under which it was made. It is not absolutely essential that a deed should refer to the power in order to execute it; but when the deed is silent on that point, and the maker has an interest in the land that will pass by the deed, without regard to the power, this, if not conclusive, is a circumstance tending strongly to show that there was no intention to execute the power."

In the case at bar the land was formerly owned by Mrs. Evans' husband, W. F. Evans, who made his will in 1948. Three paragraphs of the will are pertinent:

"2. I give and bequeath to my beloved wife, Mary Etta Evans, all of my property, both real and personal, for her own use and benefit for and during her lifetime. She is hereby authorized to keep, rent, lease or sell and dispose of the same if she so desires.

"3. [Bequests of $100 each to the testator's three sons] out of whatever my wife has not in her lifetime disposed of.

"4. All of the rest, that may be left of my estate, after the death of my said wife, and after the payment of the amounts as above provided to my sons, I give and bequeath to my daughters, Edry Evans Moore, Ruby Evans Durrett and Hazel Evans Miles, to share and share alike."

Edry Evans Moore, one of the testator's three daughters and the mother of the appellees, predeceased her father, who died in 1959. After the testator's death his widow, Mary Etta Evans, and his two surviving daughters, the appellants, consulted an attorney, who erroneously told them that no one else had any interest in the estate. In fact, of course, the devise to Edry, who predeceased her father, did not lapse but vested in Edry's children, the appellees. Ark. Stat. Ann. § 60-410 (Repl. 1971). Nevertheless, the widow and the two surviving daughters apparently believed throughout the widow's lifetime that Edry's daughters, the appellees, had no interest in the estate and that the appellants would own the property upon their mother's death.

It is the appellants' contention that they entered into a binding oral agreement to take care of their mother for the rest of her life, in return for her promise to deed to them the 120-acre tract on which Mrs. Evans resided. Both of the appellants testified that they lived up to their agreement, with one or the other of them staying with their mother and taking care of her from about 1960 until Mrs. Evans's death on February 10, 1972.

The quitclaim deed now in question was executed by Mrs. Evans about a year before her death, on February 21, 1971, though it was not recorded until May 5, 1972. The deed was prepared by the husband of one of the appellants, Joe Parks, a layman, who used a standard printed form of quitclaim deed which recited that the grantor did thereby "grant, sell, convey and quitclaim" to her two daughters the 120-acre tract in issue. The deed made no reference to the power, which, under the *Walters* case, *supra,* is a circumstance tending strongly to show that there was no intention to execute the power.

A weakness in the appellants' position arises from their admitted efforts to obtain quitclaim deeds from the appellees within a few days after Mrs. Evans's death. The appellants had consulted an attorney, who advised them to get deeds from their nieces, the appellees. Joe Parks, who alone testified about the lawyer's advice, was somewhat vague about the reason for the attorney's suggestion: "As well as I recall, the reason was that in the distant future at any time in years to come, if ever any disposition was to be made of the property, some attorney, in examining the past history of the property, might bring up a question as to whether or not these people [the appellees] had any interest and if they did we thought that they would be kind enough to cooperate and sign a quitclaim deed, then that would eliminate any possibility of any question ever arising on it."

The chancellor may well have doubted the candor of that testimony. The statute, cited above, is so fundamental and so plain that no competent lawyer would have failed to inform his clients that under the will of W. F. Evans the devise to Edry did not lapse upon her death but vested instead in her surviving daughters. Yet, according to the testimony, when the effort was made to obtain quitclaim deeds from the appellees, the latter were told that under their grandfather's will they had no interest in the property. The appellees understandably inquired why they were being asked to execute deeds if they had no interest in the land. The only answer given was somewhat lame: That the appellants' brothers had resented the terms of their father's will and might also have become angry at their late mother for having deeded the land to the appellants, if that fact could not be concealed by the execution of the requested deeds.

It must also be remembered that the two appellants, and apparently their mother as well, believed all through the mother's lifetime that no one except those three had any interest whatever in the property. In that view there was no reason for Mrs. Evans to convey anything more than her life estate to her daughters, for they supposedly already owned the remainder. Consequently the chancellor may well have concluded that the appellants' present reliance upon an asserted oral agreement was an afterthought that arose when it became apparent that the appellees had a one-third interest in the estate and refused to relinquish it.

We do not discount in any degree the appellants' commendable generosity in taking care of their aged mother for many years. The question, however, is whether that solicitude was based upon the asserted oral agreement or was simply an expression of ordinary filial devotion. Upon the record as a whole we cannot say that the chancellor's decision is clearly contrary to the preponderance of the evidence.

Affirmed.